IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re: <br><br> **The Merit Group Inc.**, *et al.* <br><br> Debtors.[1] | (Chapter 11) <br><br> Case No. 11-03216-hb <br><br> (Jointly Administered) |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTION FOR A FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 (I) APPROVING POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION, AND (V) MODIFYING THE AUTOMATIC STAY**

The Official Committee of Unsecured Creditors (the "Committee") of The Merit Group, Inc., *et al*. (collectively, the "Debtors"), by its proposed attorneys, hereby objects to the Debtors' Motion for a Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (I) Approving Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, and (V) Modifying the Automatic Stay (the "Motion").[2] In support of the Objection, the Committee respectfully represents as follows:

**Introduction**

The Debtors have made clear that they are not in a position to reorganize, and that the focus of these Chapter 11 cases will be on the liquidation of the Debtors' assets. Regions, an

---

[1] The Debtors and the last four digits of their respective tax identification numbers are: The Merit Group, Inc., f/k/a Lancaster Distributing Company, f/k/a Lancaster Paint Sundries, Inc. (4224); Merit Transportation, Inc. (9048); Merit Paint Sundries, LLC d/b/a Lancaster (8882); Merit Supply Company, LLC d/b/a Merit Supply (5878); Merit Pro Finishing Tools, LLC d/b/a/ Merit Trade Source (8544); Five Star Products, Inc. (9186); and Five Star Group, Inc., d/b/a Lancaster/Five Star, d/b/a Rightway (3506).

[2] All capitalized terms not defined herein shall have the meanings described in the Motion.

40000/0462-7638805v3
May 30, 2011

Alabama bank, will be the primary beneficiary of this liquidation, being owed, as of the Petition Date, more than $47 million.  With so much at stake, Regions apparently has dictated to the Debtors the terms on which Regions is willing to extend post-Petition Date financing (the "DIP Loan").  Essentially, Regions is insisting on the Debtors commencing and completing a sale of the Debtors' business or assets on a very accelerated timetable.

That alone, perhaps, would not make the Motion objectionable.  But the Motion goes significantly beyond the quick sale process and through a number of provisions, proposes other significant benefits for Regions, as well as two other pre-Petition Date secured lenders, which if permitted, would force upon the unsecured creditors the costs of liquidating Regions' collateral.  This is unacceptable to the Committee.  For the reasons discussed below, and that will be presented at the hearing on the Motion scheduled for June 1, 2011, the Motion should be denied unless the offending provisions are eliminated, so that the proposed financing is not just in the best interest of Regions but also is consistent with the best interest of general unsecured creditors and of the Debtors' estates.

## Background

1.  On May 17, 2011 (the "Petition Date"), the Debtors each filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Chapter 11 cases are being jointly administered for procedural purposes.

2.  On May 23, 2011, the Office of the United States Trustee appointed the Committee.

3.  On the Petition Date, the Debtors filed the Motion seeking entry of an order authorizing the Debtors to obtain secured post-petition financing and other extensions of credit

2

from Regions (the "DIP Lender") in the aggregate amount of $55 million (less the amount of the Pre-Petition Revolving Loans and Letters of Credit). The DIP loan is structured to provide the Debtors with just enough funding to permit them to consummate a quick sale of their assets under Section 363 of the Bankruptcy Code. In order for the Debtors to obtain access to the new availability to facilitate a sale of their assets, the DIP Lender has required that the Debtors agree to, *inter alia*:

        (a)        grant the DIP Lender (i) a superpriority administrative claim status having priority over all other administrative claims (subject to the Carve-Out), (ii) a first priority security interest and lien on all Post-Petition Collateral (other than avoidance actions), subject only to the Carve-Out; and (iii) a first priority priming lien on all assets and property of the estate securing the Debtors' loans under the Pre-Petition Loan Agreement;

        (b)        consummate a sale of the Debtors' assets within ninety (90) days of the Petition Date; and

        (c)        a complete waiver of any claims with respect to the DIP Loan under Section 506(c) of the Bankruptcy Code.

        4.        On May 19, 2011, the Court conducted hearings on various first day motions and entered an Interim Order granting the Motion (the "Interim Order"). The Interim Order provides for, among other things, a final hearing on the Motion to be held on June 1, 2011, with objections to the Motion to be filed and served notice parties, by 1:00 p.m. on May 31, 2011.

## Argument

        5.        The Motion should be denied, unless the overreaching provisions of the DIP loan agreement and proposed order are stricken. In order to obtain post-petition financing under Section 364(d) of the Bankruptcy Code, a debtor bears the burden of proving that (i) it is unable to obtain unsecured credit, (ii) the proposed credit is necessary to preserve the assets of the estate

3

and (iii) the terms of the financing are fair, reasonable and adequate. See, e.g., In re Ames Dept. Stores, Inc., 115 B.R. 34, 3740 (Bankr. S.D.N.Y. 1990). Proposed post-petition financing may be denied if the terms are overreaching and excessively favorable to the lenders. See In re Tenney Village Co., Inc., 104 B.R. 562, 568 (Bankr. D.N.H. 1989) (court denied post-petition financing arrangement because it incorporated overreaching terms).

6. It is well settled that the Court should approve a proposed debtor in possession financing only if such financing "is in the best interest of the general creditor body." In re Roblin Indus., Inc., 52 B.R. 241, 244 (Bankr. W.D.N.Y. 1985) (citing In re Texlon Corp., 596 F.2d 1092,1098-99 (2d Cir. 1979) and In re Vanguard Diversified, Inc., 31 B.R. 364, 366 (Bankr. E.D.N.Y. 1983)); See also Tenney Village, 104 B.R. at 569 ("The debtor's prevailing obligation is to the bankruptcy estate and, derivatively, to the creditors who are its principal beneficiaries"). Moreover, the proposed financing must be "fair, reasonable, and adequate." In re Crouse Group, Inc., 71 B.R. 544, 546 (Bankr. E.D. Pa. 1987).

7. Post-petition financing also should not be authorized if its primary purpose is to benefit or improve the position of a particular secured lender. See, e.g., In re Aqua Assocs., 123 B.R. 192, 195-98 (Bankr. E.D. Pa. 1991) ("[C]redit should not be approved when it is sought for the primary benefit of a party other than the debtor."); Ames Dep't Stores, 115 B.R. at 37 ("[A] proposed financing will not be approved where it is apparent that the purpose of the financing is to benefit a creditor rather than the estate.");Tenney Village, 104 B.R. at 568 (debtor-in-possession financing terms must not "pervert the reorganizational process from one designed to accommodate all classes of creditors and equity interests to one specially crafted for the benefit of the secured creditor").

8. Indeed, the law has long acknowledged the unequal bargaining power inherent in negotiations leading to proposed post-petition financing, as well as the very significant harm that

4

can befall creditors if the proposed financier is enabled to exploit its leverage position. See In re FCX, Inc., 54 B.R. 833, 838 (Bankr. E.D.N.C. 1985) ("[T]he court should not ignore the basic injustice of an agreement in which the debtor, acting out of desperation, has compromised the rights of unsecured creditors.").

9.      Recognizing this dynamic, courts frequently reject attempted waivers of surcharge rights under Section 506(c) of the Bankruptcy Code. In re The Colad Group, Inc., 324 B.R. 208, 224 (Bankr. W.D.N.Y. 2005) (refusing to approve DIP financing with a section 506(c) waiver intact); In re Willingham Invs., Inc., 203 B.R. 75, 80 (Bankr. M.D. Tenn. 1996); Precision Steel Shearing v. Fremont Fin. Corp. ( In re Visual Indus., Inc.), 57 F.3d 321, 325 (3d Cir. 1995) ("[Section] 506(c) is designed to prevent a windfall to the secured creditor .... The rule understandably shifts to the secured party ... the costs of preserving or disposing of the secured party's collateral, which costs might otherwise be paid from the unencumbered assets of the bankruptcy estate ....") (internal citation omitted); Kivitz v. CIT Group/Sales Fin., Inc., 272 B.R. 332, 334 (D. Md. 2000) (a secured party, and not other creditors, must bear the cost of preserving or disposing of its own collateral.); In re AFCO Enters., Inc., 35 B.R. 512, 515 (Bankr. D. Utah 1983) ("When the secured creditor is the only entity which is benefited by the trustee's work, it should be the one to bear the expense. It would be unfair to require the estate to pay such costs where there is no corresponding benefit to unsecured creditors.").

10.     It is thus well recognized that a debtor's unsecured creditors should not bear the expense of preserving or disposing of the DIP Lender's collateral.  See, e.g., In re Codesco, Inc., 18 B.R. 225, 230 (Bankr. S.D.N.Y. 1982) ("The underlying rationale for charging a lienholder with the costs and expenses of preserving or disposing of the secured collateral is that the general estate and unsecured creditors should not be required to bear the cost of protecting what is not theirs."); McAlpine v. Comerica Bank-Detroit (In re Brown Bros., Inc.), 136 B.R. 470, 474

5

(W.D. Mich. 1991) (Section 506(c) waiver violates the Congressional mandate that the trustee have authority to use a portion of a creditor's collateral to preserve or dispose of that collateral).

11. Consistent with these authorities, SC LBR 4001-4 provides guidelines for post-petition financing and enumerates the kind of provisions that this Court will not normally approve, even if forced on a hapless debtor by a secured creditor.

12. In the present cases, the Motion seeks the Court's approval of the following provisions, which are included in SC LBR 4001-4 as generally not acceptable:

(a) Waiver of potential claims under Section 506(c) of the Bankruptcy Code, in violation of SC LBR 4001-4(b)(1)(C). See Motion, Exhibit A (Proposed Order), ¶ 11.

(b) The proposed financing terms contemplate a "rollup," in violation of SC LBR 4001-4(b)(1)(F). While this may not be obvious from the express terms of the proposed loan documents, the effect of the proposed terms will be that Regions' prepetition debts will be largely paid down, while its DIP Lender claims rise to equal or exceed the prepetition loan balances.

(c) Encumbrance of avoidance actions arising under the Bankruptcy Code, as well as other claims against Regions and the other prepetition secured lenders, in violation of Local Rule 4001-4(b)(1)(H). Although the Motion does provide that the DIP Lender's liens will not include Avoidance Actions, the Motion proposes to grant Regions and the other prepetition secured lenders, in the name of adequate protection, superpriority claims under Section 507(b) of the Bankruptcy Code. See Motion, Exhibit A (Proposed Order), ¶¶ 8(e), (f), (g); Post-Petition Loan and Security Agreement (Exhibit B-1 to the Interim Order)(the "Post-Petition Loan Agreement"), ¶3.3. The effects, if permitted, would be the same as a lien, as it would remove from the sources of recovery for the general unsecured creditors the very assets of the Debtors' estates that may be most valuable to the unsecured creditors.

6

13.   In addition, the Motion provides for the DIP Lender to obtain a lien on Unencumbered Collateral.  See Motion, Exhibit A, ¶ 5(a)(i).  This would create the possibility that there are currently unencumbered assets, not subject to Regions' prepetition liens, which would go to benefit Regions to the detriment of the general unsecured creditors.  Debtors and Regions need to explain to the Committee and to the Court the existence of or absence of, otherwise unencumbered assets which the Motion seeks to encumber.

14.   The simplest solution to fix the foregoing problems is to include in any Final Order entered to approve the Motion, the following provision:

> No provision in the Motion, this Final Order, and/or any of the Loan Documents shall be read to grant the DIP Lender, Regions, Stonehenge, or any holder of other Subordinated Debt a Lien, superpriority claim (under §§ 364(c)(1) or 507(b) of the Bankruptcy Code), or administrative expense claim (under § 503(b) of the Bankruptcy Code), with respect to any Unencumbered Assets, Avoidance Actions, or any of the proceeds of any such property of the Debtors' Estates..

15.   Other provisions in the proposed DIP Loan agreements that overreach include the following:

(a)   Paragraph 2.8(d) of the 65-page Post-Petition Loan Agreement gives the DIP Lender discretion to apply proceeds of Pre-Petition Collateral to the payment of the DIP Loan, and to apply proceeds of the DIP Loan to the payment of Regions' Pre-Petition Debt.  This provision violates the anti-Rollup rule of SC LBR 4001-4(b)(1)(F).

(b)   Paragraph 9.3 of the Post-Petition Loan Agreement contains an excessively broad indemnity provision, which appears to give the DIP Lender potential claims for costs incurred by the DIP Lender prior to the Petition Date.  In view of the fact that Regions may ultimately be an undersecured creditor depending on the outcome of the sale, this provision,

7

if not pared back, would give Regions rights to assert claims for attorneys' fees and other costs that are not allowable under Section 506 of the Bankruptcy Code.

        (c)      The Motion provides for entitlement to relief from the automatic stay without discretion upon default, in violation of SC LBR 4001-4(b)(1)(I).  <u>See</u> Motion, Exhibit A, ¶17(a).

        (d)      The Post-Petition Loan Agreement provides in Paragraph 2.9(e) that the Debtors will continue to make payments under any Hedge Agreement, which are to remain in full force and effect, subject to the terms of the Hedge Agreement.  Committee counsel have not yet seen the Hedge Agreement and do not yet know what it may provide.  However, the proposed Budget includes payments to the DIP Lender totaling $ 1,694,735 for "Debt Swap" payments.  No justification, or even a reasonable disclosure, is made as to why such significant payments would be necessary, and in the best interest of creditors and the Estates.  To the contrary, it would appear that these are payments on account of pre-Petition Date obligations to Regions that have nothing to do with the DIP Loan.  All provisions relating to such obligations and payments should be stricken from the DIP Loan terms.

16.      In addition, the Committee objects to the amount of the closing fee, which is $ 175,000.00.  In view of the fact that Regions is agreeing to provide the loan to fund the process of selling its collateral for the highest possible price, and that incrementally, the new credit being provided is only a small fraction of the stated amount of the DIP Loan facility, the closing fee, coupled with the other fees requested, is too much.

17.      Lastly, the Committee's proposed financial advisors have not yet received from the Debtors' financial advisor important information that may give rise to additional grounds for objecting to the Motion.  The Committee reserves the right to raise such additional objections at the hearing on the Motion.

8

**Conclusion**

18.     Elimination of the offending provisions discussed above will ensure that the Debtors' Estates are not burdened with unreasonable and unnecessary charges and expenses, and that assets that were not part of Regions' collateral prior to bankruptcy will remain unencumbered and available for the benefit of the general unsecured creditors.  This is necessary so that the liquidation of Regions' collateral, including the costs of conducting the liquidation, will be borne by Regions, not the general unsecured creditors.  The Debtors' estates should not be diminished for cooperating with Regions in the sale of its collateral through a Section 363 sale, which is the focus of these Chapter 11 cases during the first few months of the cases.

WHEREFORE, the Creditors' Committee respectfully requests that the Motion be denied, unless all of the overreaching provisions are eliminated, and the interests of general unsecured creditors are properly protected.

Respectfully submitted,

MCCARTHY LAW FIRM, LLC

/s/     G. William McCarthy, Jr.
G. William McCarthy, Jr., I.D. #2762
Daniel J. Reynolds, Jr., I.D. #9232
3924 Forest Drive, Suite 9
Columbia, SC  29204
(803) 223-9644 Telephone
(803) 753-6960 Fax


COLE, SCHOTZ, MEISEL, FORMAN &
LEONARD, P.A.

Irving E. Walker
G. David Dean
Cole, Schotz, Meisel, Forman & Leonard, P.A.
300 East Lombard Street, Suite 2000
Baltimore, Maryland 21202
410-230-0660
410-230-0667 Facsimile

9

ddean@coleschotz.com

Proposed counsel for The Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re:<br><br>The Merit Group, Inc., *et al.*,<br>　　　　　　　　　　Debtor. | Chapter 11<br><br>Case No. 11-03216-hb<br>(Jointly Administered) |

**CERTIFICATE OF SERVICE BY MAIL**

　　　I, W. Harrison Penn, on behalf of McCarthy Law Firm, LLC, do hereby certify that the **OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTION FOR A FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 (i) APPROVING POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION, AND (V) MODIFYING THE AUTOMATIC STAY,** filed May 31, 2011, was served upon the Debtor, Stonehenge Opportunity Fund, II, LP, Regions Bank, the United States Trustee, and other attorneys and parties in interest, via ECF filing on the 31st[h] day of May, 2011:

　　　　　　　　　　　　　　　　　　　McCARTHY LAW FIRM, LLC


　　　　　　　　　　　By:　　/s/W. Harrison Penn
　　　　　　　　　　　　　　　W. Harrison Penn
　　　　　　　　　　　　　　　P. O. Box 11332
　　　　　　　　　　　　　　　Columbia, SC   29211-1332
　　　　　　　　　　　　　　　(803) 771-8836