**ALL PARTIES RECEIVING THIS NOTICE SHOULD REVIEW EXHIBIT Y AND EXHIBIT Z CAREFULLY FOR THEIR NAME AND ANY CONTRACTS OR LEASES WITH THE DEBTORS.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| The Merit Group, Inc., *et al.*, | ) | Case No. 11 – 03216-hb |
| | ) | |
| Debtors.[1] | ) | (Joint Administration) |
| | ) | |

**NOTICE OF (A) THE PROPOSED SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTORS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; (B) BIDDING PROCEDURES, AUCTION, AND HEARING ON THE SALE; (C) DEADLINE TO OBJECT TO SALE; (D) DEADLINE TO OBJECT TO ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND ESTABLISHMENT OF CURE AMOUNTS AND EXTENSION OF TIME TO ASSUME OR REJECT CERTAIN UNEXPIRED LEASES; AND (E) HEARING ON ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND CURE AMOUNTS AND EXTENSION OF TIME TO ASSUME OR REJECT CERTAIN UNEXPIRED LEASES**

TO: ALL CREDITORS AND PARTIES IN INTEREST

**YOU ARE HEREBY NOTIFIED** that the Debtors are applying for approval to sell substantially all of the property of the Debtors' estates described below free and clear of all liens and encumbrances according to the terms and conditions stated in the Motion for an Order Approving the Proposed Sale of Substantially All the Debtors' Assets Free and Clear of all Liens and Assumption, Assignment and Sale of Certain Executory Contracts and Leases filed with the Court on June 10, 2011, as amended by the Amended Motion for an Order Approving the Proposed Sale of Substantially All the Debtors' Assets Free and Clear of all Liens and Assumption, Assignment and Sale of Certain Executory Contracts and Leases filed June 29, 2011 (the "Sale Motion").

**TAKE FURTHER NOTICE** that any response, return, and/or objection to the Sale Motion should be filed with the Clerk of the Bankruptcy Court no later than **July 14, 2011**

---

[1] The Debtors and the last four digits of their respective tax identification numbers are: The Merit Group, Inc., f/k/a Lancaster Distributing Company, f/k/a Lancaster Paint Sundries, Inc. (4224); Merit Transportation, Inc. (9048); Merit Paint Sundries, LLC d/b/a Lancaster (8882); Merit Supply Company, LLC d/b/a Merit Supply (5878); Merit Pro Finishing Tools, LLC d/b/a Merit Trade Source (8544); Five Star Products, Inc. (9186); and Five Star Group, Inc., d/b/a Lancaster/Five Star, d/b/a Rightway (3506).

COLUMBIA 1042807v7

and a copy simultaneously served on all parties in interest. Any party in interest may file and serve an objection to the Sale Motion or supplement a previously filed objection to the extent that such objection or supplement is based solely on events that occur after **July 14, 2011**. Such objections, or other objections to the manner in which the Debtors conducted the Auction and the Debtors' selection of the Successful Bidder and the Back-up Bidder shall be filed no later than fifteen minutes before the scheduled commencement of the Sale Hearing and a copy delivered to counsel for the Debtors, Lender, the Creditors' Committee, and other parties participating at the Sale Hearing.

**TAKE FURTHER NOTICE** that if two or more Qualified Bids are received, an Auction will be held for the sale of substantially all the Assets of the Debtors as set forth in the Bidding Procedures attached hereto as Exhibit X and incorporated herein, on **July 20, 2011 at 10:00 am** at McNair Law Firm P.A., 1221 Main Street, Suite 1800, Columbia, South Carolina, 29201 (the "Auction"). No further notice of the Auction will be given and the Auction may be adjourned at any time and from time to time without further notice.

**TAKE FURTHER NOTICE** that a hearing will be held on the Sale Motion on **July 21, 2011** at 10:00 a.m. at the United States Bankruptcy Court, J. Bratton Davis United States Bankruptcy Courthouse, 1100 Laurel Street, Columbia, SC 29201 (the "Sale Hearing"). No further notice of the Sale Hearing will be given and the Sale Hearing may be continued or adjourned at any time and from time to time without further notice.

**TAKE FURTHER NOTICE** that, as more specifically set forth in the Sale Motion, the Debtors, as part of the sale of their Assets, are seeking to assume and assign certain Leases and Contracts listed in Schedule 1.1(a) to the Stalking Horse Agreement and Form APA, and establish cure amounts for the executory contracts and unexpired leases set forth on Schedule 5.15 to the Stalking Horse Agreement and Form APA, which are attached hereto as Exhibit Y[2] and incorporated herein (the "Contract Assumptions and Cure Amounts") and to extend the deadline to assume or reject certain real property leases until December 13, 2011, which leases are set forth in Exhibit Z (the "Post-Closing Assigned Agreements");

**TAKE FURTHER NOTICE** that any response, return, and/or objection to the Contract Assumptions and Cure Amounts or the extension of the deadline to assume or reject the Post-Closing Assigned Agreements should be filed with the Clerk of the Bankruptcy Court no later than **July 14, 2011** and a copy simultaneously served on all parties in interest.

**TAKE FURTHER NOTICE** that a hearing will be held on the Contract Assumptions and Cure Amounts and the extension of the deadline to assume or reject the Post-Closing Assigned Agreements on **July 21, 2011** at 10:00 am at the United States Bankruptcy Court, J. Bratton Davis United States Bankruptcy Courthouse, 1100 Laurel Street, Columbia, SC 29201 (the "Initial Contract Assumptions and Cure Amounts Hearing"). No further notice of the Contract Assumptions and Cure Amounts Hearing will

---

[2] The Debtors may supplement and modify Exhibit Y and Exhibit Z at any time. To the extent that the Debtors add an executory contract or unexpired lease or modify the Cure Amount, the non-Debtor affected party shall receive a separate notice and an opportunity to object to such addition or modification.

COLUMBIA 1042807v7

be given and the Contract Assumptions and Cure Amounts Hearing may be adjourned at any time and from time to time without further notice.

**TYPE OF SALE:** Private Sale or Public Auction

**PROPERTY TO BE SOLD:** All of Debtors' right, title and interest in substantially all assets and properties, real or personal, tangible or intangible, as defined in the Stalking Horse Agreement (if the Stalking Horse Agreement is approved) or the Form APA, including but not limited to equipment, machinery, inventory, supplies, commercial customer data and information, real property, software, intellectual property, books, records, accounts, chattel paper and electronic chattel paper, documents of title, certain leases, goods, investment property and vehicles and any other assets of the Debtor not designated as an Excluded Asset in the Stalking Horse Agreement or Form APA or the Sale Motion.

**SALES PRICE:** Approximately $46,000,000.00 plus other Assumed Liabilities as set forth in the Stalking Horse Agreement or Form APA plus Cure Amounts for leases and executory contracts to be assumed by the Debtors and assigned to the buyer (at closing or on or before December 13, 2011 as to certain unexpired leases of non-residential real property) as established by the Initial Contract Assumptions and Cure Amounts Hearing and such other hearings as may be necessary.

**ANY PARTY MAY MAKE A COMPETING BID; HOWEVER ALL BIDS MUST BE A QUALIFIED BID AND BE MADE PURSUANT TO BIDDING PROCEDURES AS SET FORTH IN EXHIBIT X ATTACHED HERETO**

**APPRAISED VALUE:** Not Available.

**BUYER:** MG Distribution, LLC, as set forth in the Stalking Horse Agreement filed with the Court, or the Successful Bidder at the Auction to be held in accordance with the Bidding Procedures.

**PLACE AND TIME OF SALE: Auction: July 20, 2011 at 10:00 am** at McNair Law Firm P.A., 1221 Main Street, Suite 1800, Columbia, South Carolina, 29201; **Sale Hearing: July 21, 2011** at 10:00 am at the United States Bankruptcy Court, J. Bratton Davis United States Bankruptcy Courthouse, 1100 Laurel Street, Columbia, SC 29201.

**SALES AGENT/AUCTIONEER/BROKER:** Morgan Joseph Triartisan LLC ("Morgan Joseph"), 3475 Piedmont Road, Suite 260, Atlanta, Georgia 30305 (Attn:  James D. Decker).

**COMPENSATION TO SALES AGENT/AUCTIONEER/BROKER:** Pursuant to the terms of its retention agreement, Morgan Joseph shall be entitled to receive upon the closing of the sale a fee (the "Sale Transaction Fee") equal to the sum of 2.5% of the Aggregate Gross Consideration (as defined in its retention agreement), provided there is a Stalking Horse, or if there is no Stalking Horse but the Auction results in a buyer acceptable to Lender and the Debtors. However, the Sale Transaction Fee shall not be less than $750,000. In the event there is an Auction with at least one Qualified Bidder and the Lender credit bids and closes on the sale of the Assets, the Sale

COLUMBIA 1042807v7

Transaction Fee shall be limited to $750,000.00. Any Monthly Fees received by Morgan Joseph in excess of $150,000 in the aggregate shall be credited against the Sale Transaction Fee. In addition, the Debtor shall reimburse Morgan Joseph for all reasonable out-of-pocket expenses incurred in connection with its services under the retention agreement, including but not limited to travel, lodging, meals, database usage, couriers, telecommunications, and any reasonable attorneys fees.

**ESTIMATED TRUSTEE'S COMMISSION ON SALE:** None.

**LIENS/MORTGAGES/SECURITY INTEREST ENCUMBERING PROPERTY:** (A) Regions Bank, in the approximate amount of $53,500,000 secured by a first priority lien on all of the Assets, including prepetition and post-petition Assets; (B) Stonehenge, in the approximate principal amount of $12,000,000, secured by a lien on all of the Assets, including pre-petition and post-petition Assets, which lien is subordinate to the lien of Regions Bank pursuant to an intercreditor and subordination agreement; (C) The Valspar Corporation, in the approximate amount of $350,000, secured by a lien on certain inventory, which lien is subordinate to the lien of Regions Bank and Stonehenge, pursuant to an intercreditor and subordination agreement; (D) Utah State Tax Lien filed in Salt Lake County against Strategic1 d/b/a The Merit Group, Inc. on 12/6/10 for $1,223.19, which amount is disputed; (E) Utah State Tax Lien filed in Salt Lake County against Merit Paint Sundries, LLC d/b/a Lancaster on 2/7/11 for $41,732.93, which amount is disputed; (F) Spartanburg County, South Carolina Tax Assessor, for outstanding real and personal property taxes in the amount of $59,239.84; (G) Mesquite Tax Fund payable to Mesquite, Texas for outstanding taxes in the amount of $94,554.62; and (H) Dallas County Tax Office for outstanding taxes in the amount of $31,186.02.

**DEBTOR'S EXEMPTIONS:** None.

**PROCEEDS ESTIMATED TO BE PAID TO THE ESTATE:** The Debtors and the Unsecured Creditors' Committee will request permission to set aside an undetermined amount of funds from the Sale Proceeds for payment of administrative expense claims and unsecured creditors, including both priority and non-priority unsecured claims, to be paid before the payment of the secured creditors set forth above. Although the ultimate resolution of this request is uncertain and no agreement has yet been reached, the Debtors, the Unsecured Creditors' Committee and the Lender could negotiate such an amount and other terms and conditions at the Auction and seek approval of such terms and conditions at the Sale Hearing. Any such resolution could involve release of claims or payment of funds by the parties involved. Without a consensual resolution, the Debtors may seek approval of the sale, from which all sale proceeds will be paid first to the secured creditors. Based on the present purchase price, absent an agreement, there will be little or no proceeds available to pay unsecured creditors out of this sale, which, if approved by the Court, involves substantially all of the Debtors' assets.

**BIDDING PROCEDURES: SEE <u>EXHIBIT X</u> ATTACHED HERETO.**

**OBJECTIONS TO LEASES AND CONTRACTS CURE AMOUNT, ASSUMPTIONS, AND EXTENSION OF DEADLINE TO ASSUME OR REJECT AND HEARING:** Attached hereto as <u>Exhibit Y</u>, as to each executory contract or lease that the Debtors believe may be assumed and assigned to the buyer, is (i) the title or other identifying description of the

Contract or Lease to be assumed, (ii) the name of the counterparty to such Contract or Lease, (iii) the amount, if any, determined by the Debtors to be necessary to be paid to cure any existing default under such Contract or Lease in accordance with sections 365(b) and (f)(2) of the Bankruptcy Code (the "Cure Amount"), (iv) if determined, the proposed effective date of the assumption and assignment. Attached hereto as Exhibit Z are those Leases subject to the request to extend the deadline to assume or reject until December 13, 2011. The Debtors reserve the right to supplement and modify Exhibit Y and Exhibit Z at any time, provided that to the extent that the Debtors the affected party shall receive a separate notice and an opportunity to object to such addition or modification. The performance of the Successful Bidder under these Bidding Procedures, including the delivery of the Good Faith Deposit, and its ability to close on the sale of the Assets provides adequate demonstration of the Successful Bidder's adequate assurance of future performance under the Assigned Agreements.

Any objection to the assumption and assignment of any Contract or Lease identified on Exhibit Y, including, without limitation, any objection to the Cure Amount or to the ability of a Successful Bidder to provide adequate assurance of future performance under such Contract or Lease, and any objections to the extension of the deadline to assume or reject the Leases set forth in Exhibit Z must (i) be in writing, (ii) set forth the basis for the objection as well as any cure amount that the objector asserts to be due (in all cases with appropriate documentation in support thereof), and (iii) be filed with the Clerk of the Court, United States Bankruptcy Court for the District of South Carolina, J. Bratton Davis United States Bankruptcy Courthouse, 1100 Laurel Street, Columbia, SC 29201, and served on McNair Law Firm, P.A., 1221 Main Street, Suite 1800, Columbia, South Carolina 29201, P.O. Box 11390, Columbia, South Carolina 29211 (Attn: Michael M. Beal, Esq.), so as to be **actually received no later than July 14, 2011 at 5:00 p.m. (Eastern Time)** or such later date as may be ordered by the Bankruptcy Court (the "Assignment and Cure Objection Deadline").

Any request for adequate assurance information regarding the Successful Bidder (a "Request for Adequate Assurance") must include an email address, postal address and/or facsimile number to which a response to such request will be sent. Upon receiving a Request for Adequate Assurance, the Debtors shall promptly provide such party with any non-confidential information reasonably related to adequate assurance by email, facsimile or overnight delivery.

If no objection to the proposed assumption and assignment of a Contract or Lease is timely received by the Assignment and Cure Objection Deadline, then the assumption and assignment shall be deemed authorized and the respective Cure Amount set forth on Exhibit Y shall be binding upon the counterparty to the Contract or Lease for all purposes and will constitute a final determination of total Cure Amount required to be paid by the Debtors in connection with such assumption and assignment to the Successful Bidder.

If no objection to the proposed extension of time to assume or reject certain real property Leases under section 365(d)(4) until December 13, 2011, is received by the Assignment and Cure Objection Deadline, then the extension of the deadline to assume or reject the Leases until December 13, 2011 shall be deemed authorized and the deadline to assume and assign or reject the Leases set forth on Exhibit Z shall be extended until December 13, 2011 as set forth in the Sale Order.

COLUMBIA 1042807v7

Any entity that does not timely object as set forth above shall be (i) forever barred from objecting to the assumption and assignment of any of the Contracts and Leases identified on Exhibit Y, including, without limitation, asserting any additional cure payments or requesting additional adequate assurance of future performance, (ii) deemed to have consented to the applicable Cure Amount, if any, and to the assumption and assignment of the applicable Contract or Lease, (iii) bound to such corresponding Cure Amount, if any, (iv) deemed to have agreed that the Successful Bidder has provided adequate assurance of future performance within the meaning of section 365(b)(1)(C) of the Bankruptcy Code, (v) deemed to have agreed that all defaults under the applicable Contract or Lease arising or continuing prior to the effective date of the assignment have been cured as a result or precondition of the assignment, such that the Successful Bidder or the Debtors shall have no liability or obligation with respect to any default occurring or continuing prior to the assignment, and from and after the date of the assignment the applicable Contract or Lease shall remain in full force and effect for the benefit of the Successful Bidder and such entity in accordance with its terms, (vi) deemed to have waived any right to terminate the applicable Contract or Lease or designate an early termination date under the applicable Contract or Lease as a result of any default that occurred and/or was continuing prior to the assignment date, (vii) as to those Leases set forth on Exhibit Z, deemed to have consented to the extension of the deadline to assume and assign (or reject) the leases set forth on Exhibit Z until December 13, 2011 and deemed to have consented to the Successful Bidder's occupancy and quiet enjoyment of the premises until the Lease is assumed and assigned (or rejected), and (viii) deemed to have agreed that the terms of the Sale Order shall apply to the assumption and assignment of the applicable Contract or Lease.

If no objection to the proposed assumption and assignment of a Contract or Lease or the extension of the deadline to assume and assign (or reject) certain leases, is received by the Assignment and Cure Objection Deadline, counsel for the Debtors may submit to the Court a certificate of no objection and a form of order (a "Certificate of No Objection") granting the Debtors the authority, but not the obligation, for the assumption and assignment, and serve such Certificate of No Objection on the counterparty to such Contract or Lease.

Objections to the request for an extension of time to assume and assign (or reject) shall be heard at the Sale Hearing and the Initial Contract Assumptions and Cure Amount Hearing on July 21, 2011.

If an objection to the proposed assumption and assignment of a Contract or Lease is timely received and such objection cannot otherwise be resolved by the parties, the Court may hear such objection at the Sale Hearing and the Initial Contract Assumptions and Cure Amount Hearing on July 21, 2011. The pendency of a dispute relating to the Cure Amount will not prevent or delay the assumption and assignment of any Contract or Lease. If an objection is filed only with respect to the cure amount listed on Exhibit Y, the Debtors may file a Certificate of No Objection as to assumption and assignment only and the dispute with respect to the cure amount will be resolved consensually, if possible, or, if the parties are unable to resolve their dispute, before the Court at a hearing to be scheduled after July 21, 2011. The Debtors intend to cooperate with the counterparties to the Contracts and Leases to be assumed and assigned by the Debtors to attempt to reconcile any difference in a particular Cure Amount.

6

The Debtors shall, after the consummation of the closing of the sale of the Assets, file with the Court and serve on the non-Debtor counterparties to the Leases and Contracts, a final list of those Leases and Contracts that were actually assumed and assigned to the Successful Bidder at the closing of the sale of the Assets. The Debtors shall periodically file with the Court and serve on the non-Debtor counterparties to the applicable Leases and Contracts, notice of any Post-Closing Assigned Agreements to be added to such list. Although authorized to assume and assign Leases and Contracts, assumption and assignment shall not occur until the Debtors file the list of assumed and assigned Lease and Contracts.

Any anti-assignment provisions included in, or otherwise purporting to affect, any Contracts and Leases to be assumed and assigned by the Debtors are unenforceable under section 365(f) of the Bankruptcy Code.

The Bankruptcy Court will conduct the Initial Contract Assumptions and Cure Amounts Hearing and the hearing on the extension of the deadline to assume or reject certain real property leases until December 13, 2011, and any objections filed thereon, if any, on **July 21, 2011**. With respect to all objections related to any additions or modifications to <u>Exhibit Y</u> or <u>Exhibit Z</u>, the non-Debtor parties filing such objections will receive notice of a hearing date that is not less than fourteen (14) days after the applicable Assignment and Cure Objection Deadline to consider such Contract Objections.

**STAY OF ORDER**: The Debtors request that the Bankruptcy Court order and direct that any order or orders approving the Sale Motion shall <u>not</u> be automatically stayed for fourteen (14) days.

The Debtors are informed and believe that it would be in the best interest of the estate to sell the assets pursuant to the terms of the Stalking Horse Agreement or the Form APA, subject to higher and better bids and the Auction proposed herein. The Debtors also believe that the funds to be recovered for the estate from the sale of said property justify its sale and the filing of this application.

WHEREFORE, the Debtors request the Court issue an order authorizing the sale of said property and such other and further relief as may be proper.

Dated: Columbia, South Carolina  
June 29, 2011

/s/ Michael M. Beal  
Michael M. Beal (S.C. Dist. Ct. ID# 1253)  
Robin C. Stanton (S.C. Dist. Ct. ID# 7438)  
Michael H. Weaver (S.C. Dist. Ct. ID# 9847)  
McNAIR LAW FIRM, P.A.  
1221 Main Street, 18th Floor  
Post Office Box 11390  
Columbia, South Carolina 29211  
Tel: (803) 799-9800  
Fax: (803) 753-3277  
mbeal@mcnair.net  
rstanton@mcnair.net  
mweaver@mcnair.net  
*Counsel to the Debtors and Debtors-in-Possession*

7

# **EXHIBIT X**

## Auction and Bid Procedures

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed in connection with the proposed sale of substantially all of the Assets (as defined below) of The Merit Group, Inc.; Merit Transportation, Inc.; Merit Paint Sundries, LLC; Merit Supply Company, LLC; Merit Pro Finishing Tools, LLC; Five Star Products, Inc.; and Five Star Group, Inc., as debtors and debtors in possession (the "Debtors"). Pursuant to the Bidding Procedures, the Debtors shall solicit bids for the purchase of the Assets, conduct an auction for the Assets (the "Auction") if the Debtors receive two or more Qualified Bids (as defined below), and thereafter seek entry of an order (the "Sale Order"), after notice and a hearing (the "Sale Approval Hearing"), authorizing and approving the sale of the Assets to the Successful Bidder(s) (as defined below).

A.   **Assets to be Sold**

The Debtors seek to sell substantially all of their assets (except for the "Excluded Assets" which are defined below), including, without limitation, all equipment, machinery, inventory, supplies, commercial customer data and information, real property, software, intellectual property, books, records, accounts, chattel paper and electronic chattel paper, documents of title, certain leases, goods, investment property, vehicles, customer lists and the goodwill associated with the business (such assets, the "Assets"). All of the Debtors' rights, title and interest in and to the Assets shall be sold free and clear of all liens, claims, encumbrances, rights, remedies, restrictions, pledges, interests, liabilities, charges, options and contractual commitments of any kind or nature whatsoever, whether arising before or after the date that the Debtors filed this chapter 11 case in this Court, whether at law or in equity, in accordance with section 363 of the Bankruptcy Code. As used herein, "Excluded Assets" has the meaning set forth in the Stalking Horse Agreement. No purchase price allocation among the Assets by the buyer under Section 3.5 of the Stalking Horse Agreement or the Form APA shall be binding or controlling as to any purchase price allocation regarding encumbered and unencumbered Assets agreed to among Lender, the Creditors' Committee and Debtors or as otherwise ordered by the Court.

B.   **Bid Deadline**

Any entity wishing to participate in the Auction (a "Potential Bidder") must submit a Qualified Bid (as defined below) in writing by mail, overnight delivery, facsimile or e-mail to (i) **McNair Law Firm, P.A., 1221 Main Street, Suite 1800, Columbia, South Carolina 29201, P.O. Box 11390, Columbia, South Carolina 29211 (Attn: Michael M. Beal Esq. - mbeal@mcnair.net, fax no. (803) 753-3278); (ii)** Morgan Joseph Triartisan LLC, 3475 Piedmont Road NE, Suite 260, Atlanta, GA 30305-2954 (Attn: James D. Decker – jdecker@morganjoseph.com, fax no. (212) 218-3760); **(iii) Parker, Hudson, Rainer & Dobbs LLP, 285 Peachtree Center Avenue, NE, 1500 Marquis Two Tower, Atlanta, Georgia 30303 (Attn: C. Edward Dobbs, Esq. – edobbs@phrd.com, fax no. (404) 522-8409 and James S. Rankin – jrankin@phrd.com, fax no. (678) 533-7781);** and (iv) Cole, Schotz, Meisel, Forman & Leonard, P.A., 300 East Lombard Street, Suite 2000, Baltimore, Maryland 21202 (Attn: G. David Dean, Esq. – ddean@coleschotz.com, fax no. (410) 528-9402), **so as to be actually received on or before July 15, 2011 at 5:00 p.m. (Eastern Time)** (the "Bid Deadline"), which deadline may be extended by the Debtors, after consultation with the Lender and Creditors'

Committee. No bids submitted after the Bid Deadline shall be considered by the Debtors unless the Bid Deadline is extended by the Debtors.

### C.  Bid Requirements

1.  Only bids for the Assets that constitute "Qualified Bids" will be considered by the Debtors. A "Qualified Bid" is an offer to purchase the Assets that: (i) identifies the Assets to be purchased and any Excluded Assets; (ii) identifies the price to be paid for the Assets to be purchased, an amount at least equal to (x) the price identified in the Stalking Horse Agreement (if applicable) *plus* (y) any Break-Up Fee ($500,000) and Expense Reimbursement ($750,000) *plus* (z) $500,000 (such amount shall be referred to as the "Initial Overbid Amount"), provided however, that all Qualified Bids, including any credit bids by Regions Bank, as pre-petition and post-petition lender to the Debtors (in such capacities, the "Lender") or Stonehenge, shall include sufficient cash to fund payment of amounts owed to Morgan Joseph as a "Sale Transaction Fee" and the Break-Up Fee and Expense Reimbursement if the Successful Bid is not the Stalking Horse Bid; (iii) includes an executed asset purchase agreement and a marked copy identifying any proposed revisions to the Stalking Horse Agreement (or the form of asset purchase agreement provided by the Debtors if there is no Stalking Horse Agreement (the "Form APA")); (iv) identifies the Potential Bidder and the officer(s) or authorized agent(s) who will appear on behalf of such Potential Bidder and identifies the Potential Bidders' relationship with the Debtors or insiders of the Debtors; (v) provides evidence, satisfactory to the Debtors in their reasonable discretion and in consultation with the Lender and the Creditors' Committee, of the Potential Bidder's financial wherewithal to consummate the proposed transaction; (vi) provides that such offer is not subject to any due diligence or further board or similar approval or any financing contingency that will not be removed by 5:00 pm on July 19, 2011; (vii) provides for a good faith cash deposit (a "Good Faith Deposit") to be submitted to the Debtors on or before the Bid Deadline in an amount equal to not less than ten percent (10%) of the proposed purchase price (for all Potential Bidders other than Lender, but specifically including Stonehenge) ; (viii) identifies any Contracts or Leases to be assumed and assigned in connection with the proposed purchase of the Assets and provides evidence of the Potential Bidder's ability to provide adequate assurance of future performance under such Contracts and Leases; (ix) provides that such offer is irrevocable until the earlier of (a) consummation of a transaction involving any other Potential Bidder for the same Assets or (b) September 1, 2011 at 11:59 pm; (x) includes a copy of a board resolution or similar document demonstrating the authority of the Potential Bidder to submit an offer to purchase the Assets on the terms proposed by such Potential Bidder; and (xi) contains the form of order approving the proposed transaction that the Potential Bidder would request the Debtors to submit to the Court and a copy marked to show all changes from the proposed order filed with the Court. The Stalking Horse Bidder will be deemed to have made a Qualified Bid.

In the event that the Debtors enter into a Stalking Horse Agreement, the Debtors will file the Stalking Horse Agreement (or the Form APA, if no Stalking Horse Bidder is selected) with the Court on or before **June 30, 2011**, which date is sufficiently before the Bid Deadline to allow Potential Bidders adequate time to review the Stalking Horse Agreement or the Form APA. Upon request, the Debtors will provide copies of such documents to any Potential Bidder. The Debtors may, in their business judgment, communicate with any Potential Bidder and may

2

request any additional information reasonably required in connection with the evaluation of any such Potential Bidder or bid submitted by such Potential Bidder.

As soon as practicable after a Potential Bidder submits a bid, the Debtors, after consultation with the Lender and the Creditors' Committee, will determine whether such bid is a Qualified Bid and will notify such Potential Bidder of such determination. The Debtors reserve the right to consider bids for the Assets that do not conform to one or more of the aforementioned requirements, and, after consultation with the Lender and the Creditors' Committee, may deem such bids to be Qualified Bids notwithstanding such requirements. The Debtors may aggregate separate bids from unaffiliated Potential Bidders to create one Qualified Bid, provided, however, that all such Potential Bidders shall remain subject to the provisions of section 363(n) of the Bankruptcy Code regarding collusive bidding. The Debtors will promptly provide to the Stalking Horse Bidder copies of the offer documentation (including the marked asset purchase agreement) for any bid that the Debtors determine to be a Qualified Bid.

### D.    Break-Up Fee and Expense Reimbursement

As set forth in Section 11.2 of the Stalking Horse Agreement, the Stalking Horse Bidder shall be entitled to a Break-Up Fee of $500,000 and an expense reimbursement in an amount up to $750,000 for its reasonable documented fees, costs and expenses (including, without limitation, incurred attorneys fees, other professional fees and lender fees) incurred since May 19, 2011, by the Stalking Horse Bidder in connection with the negotiation and performance of the Stalking Horse Agreement and the transactions contemplated thereby (the "Expense Reimbursement"). The Break-Up Fee and Expense Reimbursement shall be due and payable pursuant to the terms set forth in Section 11.2 of the Stalking Horse Agreement. Notwithstanding any language in the Stalking Horse Agreement to the contrary: (i) the Break-Up Fee shall only be payable if an Alternative Transaction closes, and in such case, the Break-Up Fee shall be paid at the sale closing from the sales proceeds; and (ii) the Expense Reimbursement, if payable other than in the closing of an Alternative Transaction, shall be an allowed administrative claim in an amount not to exceed $750,000, subject to review by the United States Trustee, Lender, the Debtors and the Unsecured Creditors' Committee for reasonableness. If the parties do not agree on the reasonableness of the Expense Reimbursement, the reasonableness of the Expense Reimbursement shall be determined by the Court.

### E.    Due Diligence

Through and including the Bid Deadline, the Debtors, with the assistance of Morgan Joseph, will afford Potential Bidders the opportunity to conduct a due diligence investigation regarding the Assets in the manner determined by the Debtors, in their business judgment, to be reasonable and appropriate. The Debtors shall not be obligated to furnish access to any information of any kind whatsoever regarding the Assets after the Bid Deadline.

Upon request, the Debtors will provide each Potential Bidder with a copy of the Bidding Procedures and a form Sale Order, together with a copy of the Stalking Horse Agreement (or the Form APA, if no Stalking Horse Bidder is selected). Should any Potential Bidder desire additional or further information, such Potential Bidder will be required to execute a confidentiality agreement in form and substance satisfactory to the Debtors in their business

3

judgment. Upon execution of such confidentiality agreement, the applicable Potential Bidder will be given access (through a virtual data room, site inspections or otherwise) to various financial data and other relevant and confidential information. The Debtors, together with Morgan Joseph, will coordinate all requests for additional information or access from Potential Bidders. The Debtors may, in their discretion, coordinate due diligence investigations such that multiple Potential Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections. The Debtors shall not be obligated to furnish access to any such information to any entity that does not execute a confidentiality agreement in form and substance satisfactory to the Debtors in their business judgment.

### F.   Credit Bid

Notwithstanding anything else herein, the right of Stonehenge to credit bid at the Action shall be subject to and determined by further order of this Court, which is presently under advisement. At or before the conclusion of the Auction, Lender (or Stonehenge, subject to further order of the Court) may submit a credit bid for some or all of such Assets to the fullest extent permitted under section 363(k) of the Bankruptcy Code. The Lender shall be deemed a Qualified Bidder upon its submission of a credit bid pursuant to and in compliance with the terms hereof and may assign any credit bid at any time prior to the closing, to a third party who thereupon will be entitled to close, and any such assignment shall relieve the Lender of any continued responsibility or duties with respect to any such assigned credit bid (but not under the DIP Order). Any credit bid by Lender or Stonehenge must include at least enough cash to pay any fees owed to Morgan Joseph and pay any Break-up Fee and Expense Reimbursement. The failure of the Creditors' Committee to object to a bid put forth by Lender shall not (a) impair the rights any interested party may have under paragraph 21 of the DIP Order; or (b) release Lender from any causes of action which can be brought on behalf of the Debtors' estates pursuant to said paragraph 21. If Stonehenge is permitted to credit bid by subsequent order of the Court, Stonehenge's right to credit shall not (a) prejudice or impair the rights of the Creditors' Committee to challenge the nature, extent, priority, validity, perfection or amount of Stonehenge's alleged liens, security interest and claims, in accordance with its existing challenge deadline; or (b) release Stonehenge from any causes of action which can be brought by or on behalf of the Debtors' estates relating to any of the foregoing.

### G.   The Auction

If two or more Qualified Bids are received on or before the Bid Deadline, the Debtors shall conduct the Auction commencing on **July 20, 2011 at 10:00 a.m. (Eastern Time)**, at the offices of McNair Law Firm, P.A., 1221 Main Street, Suite 1800, Columbia, South Carolina 29201, to determine the Successful Bid. The Auction will be transcribed or videotaped. The Auction may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Auction. If only one Qualified Bid is received, then the Debtors may seek approval of such bid as the highest and best bid.

4

### H. Auction Procedures

Only an entity that has submitted a Qualified Bid (a "Qualified Bidder"), to the Debtors and their counsel, the Creditors' Committee individual members and its counsel, and counsel to the Lender are eligible to participate in the Auction. All participants shall appear in person, by telephone, or through a duly authorized representative. Prior to the Auction, the Debtors, in consultation with the Lender and the Creditors' Committee, shall select the Qualified Bid that, in their business judgment, reflects the highest or otherwise best value for the Debtors' estate as the starting bid (the "Starting Auction Bid") and advise all participants in the Auction of the terms of the Starting Auction Bid. Qualified Bidders may then submit, at the Auction, bids that are better and higher than the Starting Auction Bid in an initial incremental amount equal to the Initial Overbid Amount (only if there is a Stalking Horse Agreement) and subsequent increments of at least $250,000 (collectively, the "Overbid Increments"), provided that the Debtors, in their reasonable discretion and in consultation with the Lender and the Creditors' Committee, may adjust the Overbid Increments without further order of the Court. Each Qualified Bidder shall be required to confirm at the Auction that it has not engaged in any collusion with respect to the bidding or sale.

In consultation with the Lender and the Creditors' Committee, the Debtors shall determine the Successful Bid and the Back-Up Bid. Throughout the course of the Auction, all Qualified Bidders that submit bids shall be required to serve as the Back-Up Bid at their last offered bid in the event that such Qualified Bidder is selected as the Back-Up Bid.

The Debtors may adjourn, continue, or re-open the Auction, subject to any required approval of the Court and in consultation with the Lender and the Creditors' Committee, and reserve the right to adopt other and further rules and procedures for the Auction that, in their business judgment, will better promote the goals of the Auction.

### I. Determination of Successful Bid

As soon as reasonably practicable following the Bid Deadline (if only one Qualified Bid is submitted) or the Auction (if two or more Qualified Bids are submitted), the Debtors, after consultation with the Lender and the Creditors' Committee, shall review each Qualified Bid that has been submitted and determine whether any Qualified Bid is the Successful Bid. In making such determination, the Debtors, after consultation with the Lender and the Creditors' Committee, shall consider any factor that they deem relevant, including, without limitation, the purchase price, the payment of any Break-Up Fee and Expense Reimbursement, any benefit to the Debtors' estate from any proposal to assume liabilities of the Debtors, and those factors affecting the speed and certainty of consummating the sale of the Assets. When bidding at the Auction, the Stalking Horse Bidder shall receive a cash "credit" in the amount of the Break-Up Fee and Expense Reimbursement. Notwithstanding the foregoing, no bid shall constitute the highest and best bid or the Successful Bid unless it represents an Acceptable Sale to Lender as set forth in the DIP Order or the Lender is paid in full all pre-petition and post-petition obligations and cash collateralization of all letters of credit and contingent obligations.

As soon as practicable following notification of the determination of the Successful Bid, but prior to the Sale Approval Hearing, the Successful Bidder must execute an amendment to its

5

proposed asset purchase agreement reflecting modifications agreed to by the Debtors, the Creditors' Committee, and the Lender and the Successful Bidder at the Auction (the amendment and the initial asset purchase agreement submitted with the bid are together the "<u>Asset Purchase Agreement</u>"), which Asset Purchase Agreement shall be in all respects acceptable to the Debtors, after consultation with the Lender and the Creditors' Committee.

The presentation of the Successful Bid to the Court for approval does not constitute the Debtors' acceptance of such bid. The Debtors will be deemed to have accepted the Successful Bid only when such bid has been approved by the Court pursuant to the Sale Order and the sale of the Assets proposed in such bid has been consummated.

### J.     Back-Up Bid

The Successful Bidder(s) shall be required to consummate the purchase of the Assets by **11:59 p.m. (Eastern Time) on August 12, 2011**. If the Successful Bidder(s) fails to timely consummate the purchase of the Assets, or any part thereof, then the Debtors shall be authorized, but not required, to consummate the sale of the Assets to the Qualified Bidder that submitted the Back-Up Bid pursuant to the terms of such Back-Up Bid (the "Back-Up Bidder") by **11:59 p.m. (Eastern Time) on September 1, 2011**. If the Successful Bidder(s) fails to consummate the purchase of the Assets because of a breach, default or failure to perform on the part of such Successful Bidder, the Debtors reserve the right to seek all available damages from such Successful Bidder.

### K.     Reservation of Rights

The Debtors reserve the right to determine in their reasonable discretion and in consultation with the Lender and the Creditors' Committee, whether any Qualified Bid is a Successful Bid subject to any expenses, limitations or conditions contained in these Bidding Procedures or Orders of the Court. The Debtors also reserve the right to modify the Bidding Procedures, after consultation with the Lender and the Creditors' Committee, without the need for any further order of the Bankruptcy Court, including, without limitation, (i) extending the deadlines set forth in the Bidding Procedures, (ii) adjourning the Auction, and (iii) withdrawing any Assets from the sale process at any time prior to or during the Auction, provided that any such modification is not inconsistent with the Stalking Horse Agreement or the order of the Bankruptcy Court approving these Bidding Procedures. Neither the consent of the Lender to any bid procedures, rules or process proposed by the Debtors, nor any reference, acquiescence, or participation by the Lender in any discussions or negotiations regarding any potential sale, shall constitute the consent of the Lender to any sale or disposition of any of the Assets; and the Lender has not waived and reserves all of its objections, claims, rights and remedies with respect to any sale proposed by the Debtors

### L.     Disposition of Good Faith Deposits

All Good Faith Deposits shall be held in a separate non-interest bearing escrow account for the benefit of the Debtors and Debtors' interest in the Good Faith Deposits shall be subject to the post-petition security interests granted by the Debtors to the Lender. As soon as practicable following the consummation of the sale of the Assets, any Good Faith Deposit

6

received from a Qualified Bidder who is not determined to be the Successful Bidder or Back-Up Bidder shall be released from escrow and returned to such Qualified Bidder. If the Successful Bidder or Back-Up Bidder fails to consummate the purchase of the Assets, or any part thereof, because of a breach, default or failure to perform on the part of such Successful Bidder or Back-Up Bidder, the Debtors will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder or Back-Up Bidder, and such Good Faith Deposit shall irrevocably become property of the Debtors (subject to the post-petition security interests granted by the Debtors to the Lender) without affecting or reducing any of the Debtors' other rights or claims against such Successful Bidder or Back-Up Bidder (except as otherwise provided in the Stalking Horse Agreement). If a Successful Bidder or a Back-Up Bidder fails to consummate the purchase of the Assets, or any part thereof, because of a breach, default or failure to perform on the part of the Debtors, the Good Faith Deposit deposited by such Successful Bidder or Back-Up Bidder shall be returned to such Successful Bidder or Back-Up Bidder. If a Successful Bidder consummates the purchase of the Assets, the Good Faith Deposit deposited by such Successful Bidder shall be applied as a credit toward the purchase price for the Assets and the Good Faith Deposit of the Back-Up Bidder shall be returned to the Back-Up Bidder.

M.     **As Is, Where Is**

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their estate, or their agents or representatives except as provided in the Stalking Horse Agreement or the Form APA. Except as otherwise expressly provided in these Bidding Procedures, any applicable Stalking Horse Agreement, or any applicable Asset Purchase Agreement, each Potential Bidder that submits a bid shall be deemed to acknowledge and represent that it (i) has had an opportunity to conduct reasonable due diligence regarding the Assets prior to making its bid, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and (iii) except as provided in the Stalking Horse Agreement or the Form APA, did not rely upon any oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith.

N.     **Sale Approval Hearing**

The sale of the Assets and approval of the applicable Asset Purchase Agreement shall be presented for authorization and approval by the Court at the Sale Approval Hearing, which the Debtors propose be held on **July 21, 2011 at 10:00 a.m. (Eastern Time)** at the **United States Bankruptcy Court, J. Bratton Davis United States Bankruptcy Courthouse, 1100 Laurel Street, Columbia, South Carolina 29201**. The Sale Approval Hearing may be continued, adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Approval Hearing.

7

**EXHIBIT Y**

| | Name | Address 1 | Address 2 | Address 3 | City | State | Zip | Country | Description of contract or lease and nature of debtor's interest | Br | Cure Amounts |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 35 | 1500 Railway, LLC | PO Box 310300 | Property 120210 | | Des Moines | IA | 50331-0300 | | Distribution center: NJ | | $ 252.26 |
| 48 | Abel Womack | One International Way | | | Lawrence | MA | 01843 | US | Equipment service/repair provider | 13 | 53,324.10 |
| 43 | Activant (value added reseller) | P.O. BOX 671069 | | | Dallas | TX | 75267 | USA | Eclipse server maint contract | | - |
| 57 | Activant (value added reseller) | P.O. BOX 671069 | | | Dallas | TX | 75267 | USA | IBM Software Maintenance | | - |
| 14 | ADP, Inc | Carolina Region | P.O. Box 9001006 | | Louisville | KY | 40290-1006 | USA | Avert (Screening & Selction Service | | - |
| 50 | ADP, Inc | Carolina Region | P.O. Box 9001006 | | Louisville | KY | 40290-1006 | USA | Expense Expert Plus (Concur Expense Reporting) | | - |
| 68 | ADP, Inc | Carolina Region | P.O. Box 9001006 | | Louisville | KY | 40290-1006 | USA | Payroll Processing Services | | 6,186.60 |
| 12 | ADT | 21 Northfield Ave | | | Edison | NJ | 08837 | US | Alarm service provider | 14 | - |
| 5 | ADT | 5471 W. Waters Ave | | | Tampa | FL | 33634 | USA | Alarm service provider | 2 | 1,559.56 |
| 7 | ADT Security | 14200 E. Exposition Ave | | | Aurora | CO | 80012 | USA | Alarm service provider | 8 | - |
| 113 | ADT Security Services | P.O. Box 371956 | | | Pittsburgh | PA | 15250-7956 | USA | Alarm service provider | 6 | 280.64 |
| 49 | ADT Security Services | P.O. Box 371967 | | | Pittsburgh | PA | 15250 | US | Sprinkler System | 13 | - |
| 130 | AJ Jersey | 125 St. Nicholas Ave | PO Box 587 | | South Plainfield | NJ | 07080 | US | Equipment service/repair provider | 14 | 55,607.49 |
| 122 | Allegro Sanitation | 278 Secaucus Rd | | | Secaucus | NJ | 07094 | US | Waste Collection | 14 | 3,176.13 |
| 33 | Allied Waste | 1450 E. Cleveland Rd | | | Hutchins | TX | 75141 | USA | Waste Collection | 9 | 203.08 |
| 110 | AMB Property Corporation | P.O. Box 6156 | | | Hicksville | NY | 11802-6156 | USA | Distribution center: CA | 7 | 26,494.00 |
| 41 | American Express Travel Related Services | PO Box 650448 | | | Dallas | TX | 75265-0448 | USA | Purchasing Card Service | 100 | 16,693.58 |
| 72 | Arrowhead Direct | #215 6661 Dixie Hwy | | | Louisville | KY | 40258 | USA | Drinking Water supplier | 7 | 110.52 |
| 73 | AT&T | 208 S Akard St | | | Dallas | TX | 75202 | USA | Phone / internet service | 100 | 20,995.61 |
| 74 | AT&T | 208 S Akard St | | | Carol Stream | IL | 60197 | USA | Phone / internet service | 100 | 574.36 |
| 75 | AT&T | | | | Carol Stream | IL | 60197 | USA | Phone / internet service | 9 | - |
| 64 | AT-Net (value added reseller) | 127 WEST ANTRIM DRIVE | | | Greenville | SC | 29607 | USA | network storage maint agree | 9 | 156.25 |
| 65 | AT-Net (value added reseller) | 127 WEST ANTRIM DRIVE | | | Greenville | SC | 29607 | USA | Networking equip maint contract | | 750.00 |
| 66 | AT-Net (value added reseller) | 127 WEST ANTRIM DRIVE | | | Greenville | SC | 29607 | USA | Networking equip maint contract | | - |
| 131 | AT-Net (value added reseller) | 127 WEST ANTRIM DRIVE | | | Greenville | SC | 29607 | USA | web security/filtering | | - |
| 8 | Bay Alarm | 60 Berry Drive | | | Pacheco | CA | 94553 | USA | Alarm service provider | 7 | 21.10 |
| 56 | Bergen Refrigeration | 600 Clifton Ave | | | Clifton | NJ | 07011 | US | Heat & Air | 14 | - |
| 53 | Blue Cross Blue Shield of SC | P.O. Box 6000 | | | Columbia | SC | 29260-6000 | USA | Health Insurance | | 676.35 |
| 18 | Brask Enterprises | PO Box 55287 | | | Houston | TX | 77255 | USA | Compactor and Bailer rental | 9 | 2,354.43 |
| 76 | Bright House Networks | 5000 Campuswood Dr | | | E Syracuse | NY | 13057 | USA | Phone / internet service | 2 | - |
| 77 | Bright House Networks | | | | Tampa | FL | 33630 | USA | Phone / internet service | 2 | - |
| 105 | Broadview Networks | 800 Westchester Ave | | | Rye Brook | NY | 10573 | USA | Phone / internet service | 13 | 933.53 |
| 106 | Broadview Networks | | PO Box 9242 | | Uniondale | NY | 11555-9242 | USA | Phone / internet service | 13 | - |
| 25 | CCA Global Partners, Inc. | 4301 Earth City Expressway | | | Earth City | MO | 63045 | USA | customer agreement | | 1,230.01 |
| 78 | Charter Communications | 12405 Powerscourt Dr | | | St Louis | MO | 63131 | USA | Phone / internet service | 100 | - |
| 79 | Charter Communications | | PO Box 9001920 | | Louisville | KY | 40290 | USA | Phone / internet service | 100 | - |
| 80 | Cincinnati Bell | 221 East Fourth St | | | Cincinnati | OH | 45202 | USA | Phone / internet service | 8 | 719.19 |
| 81 | Cincinnati Bell | | PO Box 748001 | | Cincinnati | OH | 45274-8001 | USA | Phone / internet service | 7 | - |
| 51 | Cintas | PO Box 349100 | | | Sacramento | CA | 95834 | USA | Floor mats provider | | 149.85 |
| 59 | Cintas Corporation | 121 Landers Road | | | Spartanburg | SC | 29303 | USA | Janitorial supplies provider | 1 | 588.30 |
| 60 | Cintas Corporation | 1586 South 5350 West | | | Salt Lake City | UT | 84104 | USA | Janitorial supplies provider | 6 | 591.38 |
| 61 | Cintas Corporation | PO Box 88005 | | | Chicago | IL | 60680 | USA | Janitorial supplies provider | 9 | 185.98 |
| 118 | Cintas Corporation | 9300 MCI Drive | | | Pinellas Park | FL | 33733 | USA | Uniform supplier contract. Expires on 12/2011 that will not be renewed | 2 | 629.82 |
| 123 | City of Pinellas Park | 5141 78th Ave. | | | N. Pinellas Park | FL | 33733 | USA | Waste Collection | 2 | 289.55 |
| 9 | CND Protection | PO Box 59743 | Dept. 23503 | | Louisville | KY | 40290 | USA | Alarm service provider | 9 | 116.71 |
| 39 | Cobalt Industrial REIT | P.O. Box 202235 | Suite 3003 | | Dallas | TX | 75320 | USA | Distribution center: FL | 2 | 34,665.71 |
| 22 | Cobert Banking Courier | 3375 Park Ave | | | Wantagh | NY | 11793 | US | Courier Service | 13 | 1,630.16 |
| 124 | CSI Waste Services | 11563 Mosteller Rd | | | Cincinnati | OH | 45241 | USA | Waste Collection | 14 | 1,053.62 |
| 40 | Dell | 400 Valley Road | | | Mount Arlington | PA | 15264-2333 | USA | Copier | 8 | - |
| 4 | Duckwall - Alco | 2455 Paces Ferry Road NW | | | Atlanta | GA | 07856 | USA | agreement for emergency response services | 7 | 942.70 |
| 27 | Home Depot | 65th Infantry Ave. | | | Carolina | PR | 30339 | USA | customer agreement | | 917.82 |
| 19 | ICI Paints (Puerto Rico), Inc. | C/O IDI Services Group, LLC | Km 13.4 | | Carolina | PR | 00985 | | Consignment Inventory | 13 | - |
| 37 | Industrial N American Properties | 1342 Jamike Dr | 1100 Peachtreee Street | Suite 1100 | Atlanta | GA | 30309 | USA | Distribution center: TX | 9 | 30,901.00 |
| 47 | Equipment Depot | PO Box 740540 | | | Erlanger | KY | 41018 | USA | Equipment service/repair provider | 8 | 46,435.64 |
| 23 | Euler Hermes ACI | 800 Red Brook Blvd. | | | Owings Mills | MD | 21117 | USA | Credit Insurance agreement | 1 | 15,343.64 |
| 17 | Everest Property Insurance Co. (EPIC) | Kensington Management Group, LT 2nd Floor, Genesis Buildin Dr. Roy's Dr | | | George Town | Grand Cayman | KY1-1001 | Grand Cayman | Captive Insurance Program Property | | 13,439.13 |
| 44 | ipSwitch | PO BOX 372 | | | New York | NY | 10008 | USA | e-mail | | - |
| 36 | Kampner Realty, LLC | Merchants Bank | PO Box 1009 | | South Burlington | VT | 05403 | USA | Distribution center: NY | 13 | 500.00 |
| 82 | Level 3 Communications | 1025 Eldorado Blvd | | | Broomfield | CO | 80021 | USA | Phone / internet service | 100 | 286.39 |
| 83 | Level 3 Communications | 1025 Eldorado Blvd | | | Atlanta | GA | 31193-1843 | USA | Phone / internet service | 100 | 759.27 |
| 84 | Level 3 Communications | 1025 Eldorado Blvd | | | Broomfield | CO | 80021 | USA | Phone / internet service | 1 | - |
| 85 | Level 3 Communications | | | | Atlanta | GA | 31193-1843 | USA | Phone / internet service | 1 | - |
| 28 | LG Sourcing, Inc. | PO Box 1535 | | | North Wilkesboro | NC | 28656 | USA | Customer Agreement | | - |
| 32 | Lincoln Financial Group | P.O. Box 0821 | | | Carol Stream | IL | 60132-0821 | USA | Disability and Life Insurance | | - |
| 63 | Merit Investment | 1310 Union Street | | | Spartanburg | SC | 29302 | USA | Main office: SC | 100 | 96,000.00 |
| 3 | Meritain Health | 300 Corporate Parkway | | | Amherst | NY | 14226 | USA | 3rd Party Administration of Dental Plan & FSA Plan | | - |
| 2 | Merrill Lynch | 4802 Deer Lake Drive East | Building 2 Floor 3 | | Jacksonville | FL | 32246 | USA | 3rd Party Administration of 401(k) Plan | | 3,157.50 |
| 70 | Metropolitan Telecommunications | 55 Waters St 5th Floor | | | New York | NY | 10041 | USA | Phone  Five Star local numbers that are pointed to local numbers at Admin off | 100 | 579.43 |
| 71 | Metropolitan Telecommunications | | PO Box 1055 | | New York | NY | 10268-1056 | USA | Phone  Five Star local numbers that are pointed to local numbers at Admin off | 100 | - |
| 116 | Mitel Leasing | P.O. Box 972629 | | | Dallas | TX | 75397 | USA | Telephone equipment | 7 | 1,288.22 |
| 86 | Network Billing Systems Voice | 155 Willowbrook Blvd | | | Wayne | NJ | 07470 | USA | Phone / internet service | 100 | - |
| 87 | Network Billing Systems Voice | | PO Box 436 | | Wayne | NJ | 07474-4360 | USA | Phone / internet service | 100 | - |
| 132 | NNJ Teamsters Benefit Plans | 810 Belmont Avenue | | | North Haledon | NJ | 07508 | | Welfare Benefits for Union Employees | | - |

*To the extent any listed contract or lease is assumed, it will be assumed on the closing date.*

| | Name | Address 1 | Address 2 | Address 3 | City | State | Zip | Country | Description of contract or lease and nature of debtor's interest | Br | Cure Amounts |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 103 | Optimum Lightpath, div of Cablevision Syste | 200 Jericho Quadrangle | | | Jericho | NY | 11753 | USA | Phone / internet service | 14 | - |
| 104 | Optimum Lightpath, div of Cablevision Systems Corporation | | PO Box 360111 | | Pittsburgh | PA | 15251-6111 | USA | Phone / internet service | 14 | - |
| 69 | Orkin | 12710 Magnolia Ave | | | Riverside | CA | 92503 | USA | Pest Control | 7 | 477.09 |
| 108 | Pitney Bowes | P. O. Box 371896 | | | Pittsburgh | PA | 15250 | USA | Postage meter | 1 | 8,024.98 |
| 42 | Poland Springs Direct | #215 661 Dixie Hwy | Suite 4 | | Louisville | KY | 40258 | US | Drinking Water supplier | 13 | 40.03 |
| 29 | PPG | | | | | | | | customer agreement | | - |
| 10 | Pro Tec/Laurens Electric Cooperative | Hwy. 14 | | | Laurens | SC | 29360 | USA | Alarm service provider | 1 | - |
| 15 | Products & Services Co | 1702 John St. | | | Cincinnati | OH | 45214 | USA | Bailer equipment lease | 8 | 734.85 |
| 117 | Products & Services Co. | PO Box 121 | | | Batavia | OH | 45103 | USA | Telephone equipment | 14 | - |
| 88 | Qwest | 1801 California St | | | Denver | CO | 80202 | USA | Phone / internet service | 100 | - |
| 89 | Qwest | 100 CenturyLink Dr | | | Monroe | LA | 71203 | USA | Phone / internet service | 100 | - |
| 90 | Qwest | | PO Box 52187 | | Phoenix | AZ | 85072 | USA | Phone / internet service | 100 | 9,004.76 |
| 91 | Qwest | 1801 California St | | | Denver | CO | 80202 | USA | Phone / internet service | 6 | 538.07 |
| 92 | Qwest | 100 CenturyLink Dr | | | Monroe | LA | 71203 | USA | Phone / internet service | 6 | 212.90 |
| 93 | Qwest | | PO Box 52187 | | Phoenix | AZ | 85072 | USA | Phone / internet service | 6 | - |
| 98 | Qwest | 1801 California St | | | Denver | CO | 80202 | USA | Phone / internet service | 13 & 14 | 1,281.40 |
| 100 | Qwest | | PO Box 52187 | | Phoenix | AZ | 85072 | USA | Phone / internet service | 13 & 14 | 4,963.48 |
| 99 | Qwest, CenturyLink | 100 CenturyLink Dr | | | Monroe | LA | 71203 | USA | Phone / internet service | 13 & 14 | - |
| 121 | Raymond Leasing Corp | P.O. Box 203905 | | | Houston | TX | 77216-3905 | USA | Warehouse equipment | 14 | 1,507.95 |
| 46 | Raymond Leasing Corp | PO Box 130 | | | Greene | NY | 13778 | US | Equipment Leased thru, One lift | 13 | - |
| 107 | Relational Technology Services, Inc. | 28214 NETWORK PLACE | | | Chicago | IL | 60673 | USA | phone system maint/support | | - |
| 62 | Roche Janitorial | PO Box 19123 | | | Oakland | CA | 94619 | USA | Janitorial supplies provider | 7 | 1,300.00 |
| 45 | Ronald Kampner | 1179 Fuller Mtn. Rd | | | N. Ferrisburg | VT | 05473 | | employment contract | | - |
| 125 | San Leandro Disposal | 610 Aladdin | Alameda County Industries | | San Leandro | CA | 94577 | USA | Waste Collection | 7 | 557.09 |
| 30 | Sherwin Williams Paint Stores Group | 1040 Guildhall Cleveland, OH 4411 | 101 W. Prospect Avenue | | Cleveland | OH | 44115 | USA | customer agreement | | - |
| 94 | Sprint | 6200 Sprint Pkwy | | | Overland Park | KS | 66251 | USA | Phone / internet service | 7 | - |
| 95 | Sprint | | PO Box 219100 | | Kansas City | MO | 64121 | USA | Phone / internet service | 7 | 66.54 |
| 119 | Teamsters Local No. 11, affiliated with Intern | 810 Belmont Avenue | | | North Haledon | NJ | 07508 | | Union contract | | - |
| 67 | The Hartford | Ocean Marine Department | 301 Woods Park Drive | | Clinton | NY | 13323 | USA | Ocean Cargo Insurance | | - |
| 58 | Thomas R. Utgard | 191 W. Nationwide Blvd | Suite 600 | | Columbus | OH | 43215 | USA | Indemnity Agreement | | - |
| 34 | Time Equities, INC., AS AGENT | 55 Fifth Ave | 15TH Floor | | New York | NY | 10003 | USA | Distribution center, KY | 8 | 23,800.00 |
| 31 | Tractor Supply Co. | 200 Powell Place | | | Brentwood | TN | 37027 | USA | customer agreement | | - |
| 112 | Transervice Logistics, Inc. | P&H Transport | 5 Dakota Drive | | Lake Success | NY | 11042-1188 | USA | Shipping contract | | 339,529.76 |
| 1 | Travelers Insurance | 385 Washington Street | | | Saint Paul | MN | 55102-1396 | USA | $15 million umbrella policy | | - |
| 24 | Travelers Insurance | 385 Washington Street | | | Saint Paul | MN | 55102-1396 | USA | Crime insurance; includes ERISA endorsement | | - |
| 96 | Verizon | 140 West St | | | New York | NY | 10007 | USA | Phone / internet service | 2&7 | 54.95 |
| 97 | Verizon | | PO Box 920041 | | Dallas | TX | 75392-0001 | USA | Phone / internet service | 2&7 | 605.06 |
| 101 | Verizon | 140 West St | | | New York | NY | 10007 | USA | Phone / internet service | 14 | - |
| 102 | Verizon | | PO Box 920041 | | Dallas | TX | 75392-0001 | USA | Phone / internet service | 14 | 22.82 |
| 126 | Waste Connections of the Carolinas | 1010 Rogers Bridge Road | | | Duncan | SC | 29334 | USA | Waste Collection | 1 | 573.90 |
| 127 | Waste Management | 3411 N. 40th St. | | | Tampa | FL | 33605 | USA | Waste Collection | 2 | 730.07 |
| 128 | Waste Management of Utah | 8652 South 4000 West | | | West Jordan | UT | 84088 | USA | Waste Collection | 6 | 190.54 |
| 134 | West Coast Copiers | 11533 US 19 N | | | N. Cleanwater | FL | 33764 | USA | | 2 | 76.96 |
| 114 | Xtra Lease | 3600 Depot Rd. | | | Hayward | CA | 94545 | USA | Storage trailer provider | 7 | - |
| 115 | XTRA Lease | 3499 Industrial Drive | | | York | PA | 17402 | USA | Storage trailers | 7 | 420.00 |
| 13 | Zurich American Insurance Company | 1400 American Lane | | | Schaumburg | IL | 60196-1056 | USA | automobile insurance | | - |
| 52 | Zurich American Insurance Company | 1400 American Lane | | | Schaumburg | IL | 60196-1056 | USA | general liability insurance | | - |
| 109 | Zurich American Insurance Company | 1400 American Lane | | | Schaumburg | IL | 60196-1056 | USA | property insurance | | - |
| 133 | Zurich American Insurance Company | 1400 American Lane | | | Schaumburg | IL | 60196-1056 | USA | worker compensation insurance | | - |
| | National Lease (Velocity Express) | PO Box 4730 | | | Carol Stream | IL | 60197-4730 | | Freight Carrier Transportation Agreement | | 36,700.00 |
| | | | | | | | | | | $ | 1,009,629.59 |

*To the extent any listed contract or lease is assumed, it will be assumed on the closing date.

## **EXHIBIT Z**

| Company | Expiration Date | Contact Info | Pre Petition Cure Cost | Stub Rent Owed | June Rent Owed (a) | Total | WH # |
|---|---|---|---|---|---|---|---|
| Cobalt Industrial REIT | 2/28/2015 | P.O. Box 202235 Dept. 23503 Dallas, TX 75320 | $ 17,891.98 | $ 16,773.73 | $ - | $ 34,665.71 | 2 |
| Distribution 1 Patent Owner, LLC | 7/31/2013 | PO Box 37098 Baltimore, MD 21297-3098 | $ 11,538.58 | $ 10,817.42 | $ - | $ 22,356.00 | 6 |
| AMB Property Corporation | 2/28/2014 | P.O. Box 6156 Hicksville, NY 11802-6156 | $ 13,674.32 | $ 12,819.68 | $ - | $ 26,494.00 | 7 |
| Time Equities, INC., AS AGENT | 12/31/2012 | 55 Fifth Ave 15TH Floor New York, NY 10003 | $ 12,283.87 | $ 11,516.13 | $ - | $ 23,800.00 | 8 |
| Industrial N American Properties | 10/31/2017 | C/O IDI Services Group, LLC 1100 Peachtreee Street Suite 1100 Atlanta, GA 30309 | $ 23,966.97 | $ 22,469.03 | $ - | $ 46,436.00 | 9 |
| 1500 Rahway, LLC | 10/31/2021 | PO Box 310300 Property 120210 Des Moines, IA 50331-0300 | $ - | $ - | $ - | $ - | 14 |
| Kampner Realty, LLC | 4/30/2012 | Merchants Bank PO Box 1009 South Burlington, VT 05403 | $ - | $ - | $ - | $ - | 13 |
| Merit Investment | 12/31/2011 | 1310 Union Street Spartanburg, SC 29302 | 80,000.00 | 16,000.00 | 32,000.00 | 128,000.00 | 100 |
| | | | $ 159,355.72 | $ 90,395.99 | $ 32,000.00 | $ 281,751.71 | |

Notes:
(a) The Company typically paid the Merit Investment rent quarterly during the first week of the second month of the quarter. The lease terms represent that rent should be paid monthly. The current forecast is for the Company to pay the Q3 quarterly rent on August 1st. However, the cure amounts due and owing under the lease agreement are represented herein.

*To the extent any lease is assumed, it will be assumed on the closing date or as provided by further Court order.*